## C. M. CHAMBERLIN v. R. W. MILBANK & Co. et al.

Where a party who has advanced money upon a bill of lading, which he afterwards has reason to believe is a forgery, permits the supposed forger to raise means from a third person

to reimburse the advances made, and the bill of lading proves to be a forgery, it will be regarded as a fraud upon the third person, by which the party who made the advance will not be allowed to benefit himself.

APPEAL from the Fourth District Court of New Orleans, *Strawbridge*, J. *B. D. Howard*, for plaintiff. *John Finney*, for defendants. The judgment of the court was pronounced by

ROST, J. The plaintiff claims from the defendants the delivery of a note of hand, subscribed by one *Martam*, deposited by him with *John D. Marsh*, and avers that the order he gave the defendants, *R. W. Milbank & Co.*, on *Marsh* for said note was obtained by fraud and without consideration. The case is before us on the appeal of *R. W. Milbank & Co.*

One *Thomas P. Hoey*, a stranger in this city, employed the firm of *R. W. Milbank & Co.* as his merchants, and delivered to them a bill of lading for fifty bales of cotton, or thereabouts, upon which they advanced to him at different times about nine hundred dollars. After these advances had been made, the clerk of *Milbank & Co.* drew their attention to the striking similarity of the handwriting in the bill of lading and in the letters received from *Hoey* by the house, intimating the probability that the bill of lading was a forgery. The witness *Overton* examined the letters and the bill of lading with *Milbank*, who exhibited them to him, and states that he came to the conclusion, to which the house had previously come, that the bill of lading was forged. This and the non-arrival of the cotton within a reasonable time induced *Milbank* to call upon *Hoey*, to get him to refund the advances he had received; which he promised to do in the course of the day. *Hoey* then applied to the plaintiff for a loan, offering him as security a mortgage on slaves in Texas, and the transfer of the bill of lading in the possession of *Milbank & Co.* On that security, the plaintiff agreed to let *Hoey* have the proceeds of the note now sued for, if he could discount it. On the evening of the same day, *Milbank* again saw *Hoey*, who told him of the contemplated arrangement with the plaintiff. They then called together on the said plaintiff, who confirmed the statement of *Hoey*, and told *Milbank* that, it being then late on Saturday, he would ascertain whether he could discount the note, and give him a definitive answer on the following Monday. They then separated, but *Milbank* returned soon after, and told the plaintiff that he could use the note itself, and wished an order on *Marsh* for it, which the plaintiff agreed to give. *Milbank* again left the office and sent for the order by *Otto Klemm*, one of his friends, to whom it was delivered. *Klemm* has testified that on the morning of that day, *Milbank* told him that the cotton had not arrived, and that he was determined to have the money or security for the advances made to *Hoey*. He stated to him, at the same time, that he had misgivings that the bill of lading was forged, and that *Hoey* had no cotton.

The order upon *Marsh* was countermanded before it had been presented, and a demand of the note made. A few days after this transaction *Hoey* left the city. The bill of lading proved to be a forgery, and the cotton never arrived.

It is admitted, that the bill of lading then in the possession of *Milbank & Co.*, and which they had every reason to believe a forgery, was to be transferred to the plaintiff, to secure the loan he was to make. *Milbank & Co.* concealed from him their apprehensions and the facts upon which they were based. They acted in such a manner as to produce in the plaintiff a belief of what was false, or, what comes to the same thing, an ignorance or disbelief of what was true; and by this continued silence induced him to believe that the security was ample, and created the error under which the order for the note was given. It

is an inflexible rule of law, that error founded on such a cause invalidates all contracts; and it should be particularly enforced in commercial transactions, if, as was said by an eminent judge, the law of commerce is the law of honor. C. C. art. 1841, par. 1, 2, 5, 6, 8,

The judgment is affirmed, with costs.